**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:22-CR-00246 |
| v. | (Chief Judge Brann) |
| NICHOLAS PERKINS, | |
| Defendant. | |

## MEMORANDUM OPINION

### NOVEMBER 7, 2023

At the start of the COVID-19 pandemic, virtually every business in the United States was forced to shut its doors or limit its services. As a result, business owners found themselves without revenue to pay their expenses, leaving employees without an income to pay their own bills. In response, and with uncharacteristic urgency (but perhaps characteristic thoughtfulness and deliberation), Congress devised a solution and passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The Act empowered the Small Business Administration to give businesses the money they needed to pay expenses, so long as those businesses promised to use that money to pay legitimate business expenses, in particular their employees' wages.

The Government alleges that Defendant Nicholas Perkins, the owner and operator of Well Versed Oilfield Services, LLC, took that money, but broke his promise when he used it to buy a vacation home. Perkins insists that the Government,

"feeling duped" by his home purchase, is seeking to criminalize behavior that it "didn't like," but is not actually illegal.[1] He seeks to dismiss the indictment against him, as well as suppress evidence seized pursuant to a warrant he argues was constitutionally deficient. For the reasons discussed below, the Court will grant in part, and deny in part Perkins' motion to dismiss and deny his motion to suppress.

## I.    PROCEDURAL HISTORY

On June 28, 2022, a grand jury sitting in the Middle District of Pennsylvania returned a four-count indictment against Defendant Nicholas Perkins, charging him with one count of Wire Fraud, in violation of 18 U.S.C. § 1343 one count of Unlawful Monetary Transaction, in violation of 18 U.S.C. § 1957, one count of Bank Fraud, in violation of 18 U.S.C. § 1344, and one count of False Loan Application, in violation of 18 U.S.C. § 1014.[2]  On July 13, 2022, Perkins appeared before United States Magistrate Judge William I. Arbuckle and pleaded not guilty to all charges.[3]

On August 1, 2023, Perkins filed two pretrial motions: a Motion to Dismiss the Indictment,[4] and a Motion to Suppress Evidence Seized Pursuant to the Search Warrant for Email Account Records from Google.[5] Both motions are fully briefed

---

[1]    Mot. to Dismiss Br., Doc. 27 at 6.
[2]    Indictment, Doc. 1.
[3]    Doc. 12.
[4]    Mot. to Dismiss ("MTD"), Doc. 26.
[5]    Mot. to Suppress ("MTS"), Doc. 28.

and ripe for disposition.[6] For clarity, the Court will discuss the factual background relevant to each motion separately.

## II. MOTION TO DISMISS

### A. Alleged Factual Background

In March 2020, the CARES Act was enacted to provide financial assistance to counteract the effects of the COVID-19 pandemic.[7] Among the relief provided was the Paycheck Protection Program ("PPP"), administered by the Small Business Administration, which provided loans to businesses through outside lenders.[8] The principal and interest of a PPP loan were entirely forgivable if the business used the proceeds on certain authorized expenses.[9] PPP loan applications were processed by participating financial institutions, and the loans, though guaranteed by the SBA, were funded with the lenders' own monies.[10]

On April 28, 2020, Nicholas Perkins secured a $465,786 PPP loan in the name of his company, Well Versed Oilfield Services, LLC, through Northwest Bank.[11] Perkins transferred the funds to an account in the name of Well Versed, ending in

---

[6] MTD Br., Doc. 27; MTD Opp., Doc. 32; MTD Reply, Doc. 36; MTS Br., Doc. 29; MTS Opp., Doc. 33; MTS Reply, Doc. 37.

[7] Indictment ¶ 2.

[8] *Id.* ¶ 2-3.

[9] *Id.* ¶ 4. The Court notes that there is a potential dispute between the parties whether the loan proceeds, or just an amount of money equal to the proceeds must be spent on authorized expenses. The Court offers no opinion on that issue as it is not currently before it, as discussed *infra*.

[10] *Id.* ¶ 6.

[11] *Id.* ¶¶ 8-10. Northwest Bank is referred to as Lender #1 in the indictment.

XXXX7898.[12]  Less than a month later, Perkins and his wife Brandi Perkins signed a purchase agreement for a home in Dauphin Island, Alabama for approximately $850,000.[13] On June 4, 2020, Perkins and his wife signed a loan application in which Perkins listed $425,000 of the PPP loan proceeds as an asset.[14] On July 1, 2020, Perkins transferred $420,000 of the proceeds from the account ending in XXXX7898 to a Well Versed business checking account ending in XXXX1172.[15] The memo for the transfer included the street address of Alabama home.[16] That same day, Perkins signed a check from the Well Versed business checking account ending in XXXX1172 payable to himself in the amount of $420,000 and deposited it into his personal account ending in XXXX8515.[17] Also that same day, Perkins sent a wire transfer from his personal checking account to Nations Direct.[18] The memo for that transfer also identified the Perkins and the home"[19]

On December 8, 2020, Perkins submitted documentation to Northwest Bank to forgive the PPP loan in which he stated that a qualifying amount of the loan

---

[12]  *Id.* ¶ 11.
[13]  *Id.* ¶¶ 12-13.
[14]  *Id.* ¶ 13.
[15]  *Id.* ¶ 14.
[16]  *Id.*
[17]  *Id.* ¶ 15.
[18]  *Id.* ¶ 16.
[19]  *Id.*

proceeds were used for permissible expenses.[20] The SBA provided the funds to Northwest on January 21, 2021 to forgive the loan.[21]

## B.  Standard of Review

Federal Rule of Criminal Procedure 7(c) requires an indictment to "be a plain, concise, and definite written statement of the essential facts charged." "[A]n indictment is deemed sufficient so long as it:"

> (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.[22]

"Moreover, 'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'"[23]

Therefore, to survive a motion to dismiss under Rule 12(b)(3)(B)(v), an indictment must simply set forth facts that, if true, could permit a jury to find that the defendant committed the charged offense.[24] The scope of the Court's review is accordingly limited to the four corners of the indictment.[25] "A pretrial motion to

---

[20]  *Id.* ¶ 17.

[21]  *Id.* ¶ 18.

[22]  *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)).

[23]  *U.S. v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007); *Rankin*, 870 F.2d at 112).

[24]  *U.S. v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012) (citing *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002); *United States v. DeLarentis*, 230 F.3d 659, 660 (3d Cir. 2000)).

[25]  *Id.* at 595.

dismiss is not a permissible vehicle for addressing the sufficiency of the government's evidence," making "credibility determinations [or] weighing of proof."[26] However, the Court "need not blindly accept a recitation in general terms of the elements of an offense."[27] Dismissal is appropriate where "the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation."[28]

### C. Wire Fraud and Unlawful Money Transaction (Counts I and II)

To secure an indictment for wire fraud in violation of 18 U.S.C. § 1343, the Government must show probable cause to believe that Perkins (1) "devised a scheme to defraud;" (2) "acted with the intent to defraud;" and (3) used the wires "in advancing, furthering, or carrying out the scheme."[29] To establish a scheme to defraud, the Government must prove "that an aim of the alleged scheme was to deprive another of money" or property.[30]

Perkins argues that the indictment fails to allege that either Northwest or the SBA "were deprived of any money or property by Mr. Perkins"[31] or that he "fraudulently obtained the PPP funds."[32] The Government argues the allegation of

---

[26] *Id.* (citing *DeLarentis*, 230 F.3d at 660; *Bergrin*, 650 F.3d at 265).
[27] *Id.* at 595 (citing *Panarella*, 277 F.3d at 685).
[28] *Bergrin*, 650 F.3d at 264-65 (quoting *Panarella*, 277 F.3d at 685).
[29] Third Cir. Model Crim. Jury Instr. § 6.18.1343.
[30] *United States v. Porat*, 2022 WL 685686, at *25 (E.D. Pa. Mar. 8, 2022), *aff'd* 76 F.4th 213 (3d Cir. 2023).
[31] MTD Br. 15.
[32] *Id.* at 13.

"[a]n internet transfer of $420,000 of PPP loan proceeds"[33] for the purpose of purchasing the vacation home "sufficiently alleges the money or property which was the object of the defendant's scheme."[34] Further, conceding that the indictment does not allege that Perkins "[o]riginally obtain[ed] the loan proceeds through fraudulent means,"[35] the Government argues that it is sufficient that the indictment details that the funds were to be used for eligible business expenses, but were instead used to purchase the vacation home, and that Perkins "submitted false documentation to Northwest Bank in order to forgive the PPP loan."[36]

Arguing that intent to defraud "need not have been present when [Perkins] initially requested and received the loan, the Government relies on the Third Circuit's opinion in *United States v. Fattah*.[37] In *Fattah*, the defendant was charged with offenses relating to his "fraudulently obtaining and failing repay lines of credit."[38] "In applying for lines of credit, Fattah represented to various banks that his company, 259 Strategies, LLC, would use the money for business purposes when in fact Fattah intended to use the money for personal expenses."[39] Fattah was also charged with defrauding the Philadelphia School District.[40] Fattah's company

---

[33]   MTD Opp. 19 (quoting Indictment ¶ 20).
[34]   *Id.*
[35]   *Id.* at 13.
[36]   *Id.* at 20-21 (citing Indictment ¶¶ 11-17).
[37]   858 F.3d 801 (3d Cir. 2017). The Government refers to the case as *Yattah*.
[38]   *Id.* at 806.
[39]   *Id.*
[40]   *Id.*

contracted with Delaware Valley High School, and he became DVHS's Chief Operating Officer.[41] "Through his position at DVHS, Fattah submitted fraudulent budgets to the PSD that requested funding for nonexistent jobs and unperformed services. All told, the PSD overpaid $940,000 over a two-year period, and Fattah personally pocketed part of that sum."[42]

Fattah argued that charges for bank fraud and wire fraud should have been dismissed because they "merely charged a breach of contract, not a criminal offense;" specifically that the conduct charged was "consistent with making truthful representations at the time he applied for the loan but later failing to use the funds as promised."[43] The Government notes that the court rejected Fattah's argument, holding that Fattah's "requesting excess funds for DHVS' budgets and pocketing the surplus" sufficiently charged fraud.[44]

However, the Third Circuit rejected Fattah's argument because the indictment "properly charged that Fattah made express misrepresentations *to obtain the loan*."[45]

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 814-15.

[44] MTD Opp. 18 (quoting *Fattah*, 858 F.3d at 815).

[45] *Fattah*, 858 F.3d at 815 (emphasis added, internal quotations removed). The court discussed this argument as it applied to the charge of bank fraud then subsequently rejected it as to the wire fraud charges. *See id.* ("Fattah repeats his breach-of-contract argument that the Superseding Indictment merely charged that he failed to perform all of the services identified in the [DVHS's] budgets, not that he lied to obtain those funds. We reject this argument for the reasons provided above.").

The Government concedes that this element is not charged in the indictment here.[46] Because fraud "requires a showing of deception *at the time the promise is made*,"[47] the Court will dismiss Count I of the indictment.

Therefore, Count II must also be dismissed. To secure an indictment for an unlawful monetary transaction in violation of 18 U.S.C. § 1957, the Government must show probable cause to believe that Perkins "(1) engage[d] or attempt to engage (2) in a monetary transaction (3) in criminally derived property that is of a value greater than $10,000 (4) knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from 'specified unlawful activity.'"[48] Here, the specified unlawful activity is wire fraud,[49] and because the Court has found that

---

[46] *Compare* MTD Opp. 13 ("Originally obtaining the loan proceeds through fraudulent means, however, is neither a requisite element of any of the four counts in the indictment, nor is it alleged so by the Government.") *with Fattah*, 858 F.3d 815 ("[T]he Superseding Indictment plainly charged Fattah with making representations that he knew to be false or fraudulent at the time he made them.").

[47] *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1007 (7th Cir. 2004) (emphasis added); *see also Puckett v. U.S.*, 556 U.S. 129, 137 (2009) (rejecting argument "that a mere breach of contract retroactively causes the other party's promise to have been coerced or induced by fraud"); *U.S. v. Steffen*, 687 F.3d 1104, 1116 (8th Cir. 2012) ("[A] fraud claim is permitted only if it arises from acts that are separate and distinct from the contract.") (quoting *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 820 (8th Cir. 2010); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("The failure to carry out a promise made . . . does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform."); *Cavic v. Grand Bahama Development Co., Ltd.*, 701 F.2d 879, 883 (11th Cir. 1983) ("[A] promise of future action or a prediction of future events cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it, and it is not false when made.").

[48] *United States v. Sokolow*, 91 F.3d 396, 408 (3d Cir. 1996).

[49] *United States v. Cefaratti*, 221 F.3d 502, 507 (3d Cir. 2000) (citing 18 U.S.C. § 1961(1)(B)).

the indictment does not show probable cause to believe that Perkins committed wire fraud, the indictment does not satisfy the fifth element of the alleged violation.

### D.    Bank Fraud

To secure an indictment for bank fraud in violation of 18 U.S.C. § 1344, the Government must show probable cause to believe that Perkins "knowingly execute[d] a scheme or artifice to (1) "defraud a financial institution,"[50] or (2) to "obtain bank property" "by means of false or fraudulent pretenses, representations, or promises."[51] As discussed above, a scheme to defraud is a scheme in which an aim is to deprive another, here Northwest Bank, of money or property. Perkins argues that Northwest was not defrauded because, "[u]pon Mr. Perkins being granted forgiveness, the SBA paid [Northwest] the value of the loan."[52] The Government argues that the indictment states how Perkins defrauded Northwest by submitting a forgiveness application "stating falsely the dollar amount for which forgiveness was requested had been used for costs that were eligible for loan forgiveness."[53]

As an initial matter, the Court notes that the SBA is not a "financial institution" under the statute.[54] To the extent that the "indictment lays out, in detail,

---

[50]   18 U.S.C. § 1344(1).
[51]   *Loughrin v. U.S.*, 573 U.S. 351, 355-356 (2014) (citing 18 U.S.C. § 1344(2)).
[52]   MTD Br. 26.
[53]   MTD Opp. 28.
[54]   18 U.S.C. § 20.

[Perkins'] scheme to defraud Northwest Bank, and the SBA," it is only the scheme to defraud the former that is relevant to Count III of the indictment.

The Supreme Court has held that there is no requirement "that the victim bank ultimately suffer financial harm, or that the defendant intend that the victim bank suffer such harm."[55] Rather, "it is 'sufficient' that the [bank] be 'deprived of its right' to use of the property, even if it did not ultimately suffer unreimbursed loss."[56] The alleged false statement deprived Northwest of its right to repayment of the loan by Perkins.[57] That Northwest was reimbursed by the SBA is not a basis to dismiss the bank fraud charge. Nor is the fact that, had the loan not been forgiven, Perkins would have still had a legal obligation to repay it.[58]

### E.     False Loan Application

To secure an indictment for false loan application in violation of 18 U.S.C. § 1014, the Government must show probable cause to believe that Perkins (1) "made a 'false statement or report,'" (2) "'for the purpose of influencing in any way the action of [a described financial institution] upon any application, advance, . . .

---

[55]  *Shaw v. U.S.*, 580 U.S. 63, 68 (2016).

[56]  *Id.* at 67-8 (quoting *Carpenter v. United States*, 484 U.S. 19, 26-7 (1987)).

[57]  *See United States v. Hird*, 914 F.3d 332, 344 (3d Cir. 2019) (observing "that the right to be paid has routinely been recognized as property") (citing *Pasquantino v. U.S.*, 544 U.S. 349, 356 (2005); *accord United States v. Yates*, 16 F.4th 256, 266 (9th Cir. 2021); *United States v. Maddux*, 914 F.3d 437, 444 (6th Cir. 2019); *U.S. v. Bengis*, 631 F.3d 33, 39-40 (2d Cir. 2011).

[58]  *See United States v. Greenlaw*, 84 F.4th 325, 346 (5th Cir. 2023) (citing approvingly holding of *United States v. Saks*, 964 F.2d 1514, 1519 (5th Cir. 1992) "that a fraudulent loan transaction exposed financial institutions and lenders to risk of loss even though the loan was 'secured, and [defendants] assumed a legal obligation to repay it.'").

commitment, or loan.'"[59] Perkins argues that he did not make a false statement on his Forgiveness Application because he did, in fact, spend "more than the dollar amount for which forgiveness is requested on Permissible Expenses."[60] The Government responds that Perkins' contention that he "spent $796,367.55 on Permissible Expenses" is inappropriate for a Rule 12 motion to dismiss because it relies on evidence outside of the four corners of the affidavit.[61]

Perkins does not contest that his statement on the Forgiveness Application was made for the purpose of influencing the action of Northwest. Rather, he argues that he did not actually make a false statement on the Application. Unfortunately for Perkins, this is an argument that cannot be made without referring to evidence outside of the four corners of the indictment. If Perkins did spend at least $465,786 on Permissible Expenses, he may introduce such evidence at trial.

Relatedly, Perkins also argues that both Counts III and IV should be dismissed because the Government does not "allege that Mr. Perkins did not spend $465,786.00 on permissible expenses."[62] He notes that "borrowers of PPP loans are eligible for forgiveness 'in an amount equal to the sum of the costs incurred and payments made during the covered period.'"[63] This argument misses the mark.

---

[59] *Fattah*, 914 F.3d at 184 (quoting *Williams v. United States*, 458 U.S. 279, 284 (1982)).
[60] MTD Br. 32 (internal quotations removed).
[61] MTD Opp. 31.
[62] Reply 18.
[63] *Id.* at 17 (citing 15 U.S.C. § 636m(b)).

Perkins is not being charged with a violation of the CARES Act. He is being charged with making a false statement for the purpose of influencing Northwest Bank's action on his Forgiveness Application. The facts alleged in the indictment—that he borrowed $465,786 in April 2020, signed a purchase agreement for the vacation home in May, listed $425,000 of the funds as an asset on a mortgage application in June, then used $420,000 of the proceeds for a down payment—are sufficient to establish probable cause to believe that Perkins' December 8, 2020 statement that he spent $465,786 on Permissible Expenses was false.

## III.    MOTION TO SUPPRESS

### A.    Alleged Factual Background

On July 12, 2022, after Perkins had been indicted, Internal Revenue Service Special Agent Ava-Marie Burnside applied for, and Chief Magistrate Judge Karoline Mehalchick granted a warrant authorizing the production, search, and seizure of certain information associated with the business email accounts of Nicholas and Brandi Perkins (the "Target Accounts").[64] The warrant required Google, the provider of email services to Well Versed, to turn over all information relating to the Target Accounts, including emails from January 1, 2020 to May 15, 2021.[65]

In her affidavit of probable cause, Burnside stated that, in November 2020, the IRS received bank information that showed Perkins secured approximately

---

[64]    Warrant App., Doc. 33-1 at 1; Warrant Aff. ("Aff."), Doc. 33-1 pp. 3-17, ¶¶ 10, 12, 20.
[65]    Aff. Attach. A.

$465,000 in forgivable PPP loan funds from the SBA on April 28, 2020.[66] PPP loans are to be fully forgiven if the business incurs eligible costs within eight to twenty-four weeks of origination, with a majority of those costs being payroll expenses.[67] Perkins used his Well Versed email account to submit the business' financial records to Northwest as part of his PPP loan application.[68] On June 15, 2021, the IRS received emails between Perkins and his accountants which included discussions of the PPP loan, financial issues, and a house purchase in Dauphin Island, Alabama.[69] In April 2021, June 2021, and March 2022, the IRS received multiple records from multiple real estate, mortgage, and title companies which each communicated with Nicholas and Brandi Perkins using their Well Versed email addresses.[70]

On June 15, 2020, Perkins emailed his accountants, stating that he would be using $420,000 from a Well Versed bank account to purchase a vacation home.[71] Perkins and his mortgage company emailed his accountants multiple times during the day requesting a letter that Well Versed would not be adversely affected by the withdrawal.[72] On July 1, 2020, Perkins initiated a transfer of $420,000 from Well Versed's bank accounts to his personal account and then used those funds for the

---

[66] Aff. ¶ 9.
[67] *Id.*
[68] *Id.* ¶ 10.
[69] *Id.* ¶ 12.
[70] *Id.* ¶ 13.
[71] *Id.* ¶ 16.
[72] *Id.*

down payment of the vacation home.[73] On December 28. 2020, Perkins submitted a PPP loan forgiveness application which was subsequently approved.[74]

The warrant describes the "property to be searched" as the information associated with the Target Accounts, "stored at premises owned, maintained, controlled, or operated by Google LLC."[75] It required Google to disclose to the Government all emails from January 1, 2020 to May 15, 2021 for the Target Accounts, as well as information relating to the identification of the Accounts; access of the Accounts; address books, contact lists; calendar data, pictures and files of the Accounts; and all records of communications between Google and any person regarding the accounts.[76] It then described the information to be seized by the Government as all information that constitutes evidence of violations of 18 U.S.C. §§ 1957, 1956, 1014, 1343, and 1344, including (a) "communications and messages detailing any preparatory steps taking in furtherance of the scheme;" (b) evidence indicating how and when the email account was accessed or used; (c) "[e]vidence indicating the email owner's state of mind as it relates to the crime under investigation;" and (d) "identity of the person(s) who created or used the user ID."[77]

---

[73] *Id.* ¶ 17.
[74] *Id.* ¶ 18.
[75] *Id.* Attach. A.
[76] *Id.* Attach B-I.
[77] *Id.* Attach. B-II.

## B.    Fourth Amendment

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause." When determining whether a warrant is supported by probable cause, "[a] reviewing court may not conduct a *de novo* review of a probable cause determination."[78] Rather, "[t]he duty of a reviewing court is 'simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'"[79] "[I]f a substantial basis exists to support the magistrate's probable cause finding, [this Court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant."[80] Although this Court must "not merely rubber stamp a magistrate's conclusions, [the Court] must heed the Supreme Court's direction that 'doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'"[81]

"A magistrate may find probable cause when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[82] The United States Court of Appeals for the Third

---

[78]  *United States v. Golson*, 743 F.3d 44, 53 (3d Cir. 2014) (citing *Illinois v. Gates,* 462 U.S. 213, 236 (1983)).

[79]  *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Gates,* 462 U.S. at 238 (ellipsis omitted)).

[80]  *Id.* (internal quotation marks omitted).

[81]  *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates,* 462 U.S. at 237 n.10 (internal citation omitted)).

[82]  *Miknevich*, 638 F.3d at 182 (quoting *Gates,* 462 U.S. at 238).

Circuit has "held that probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules."[83] "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner."[84]

## C.    Analysis

Perkins advances six arguments that the evidence obtained pursuant to the warrant should be suppressed: 1) the warrant was not supported by probable cause; 2) the evidence underlying the warrant was stale; 3) the warrant was overbroad; 4) the warrant was insufficiently particularized; 5) the warrant did not establish a nexus between the alleged crime and the property to be searched; and 6) the warrant violated his Sixth Amendment right to counsel.[85] The Court addresses each argument in turn.

### 1.    Probable Cause

Perkins argues that the warrant fails to establish probable cause that both a crime was committed,[86] and that evidence of that crime would be found in the Perkins' email accounts.[87] As to the former, the Court notes that "[t]he grand jury's return of the indictment suffices to demonstrate probable cause that the[] offenses

---

[83]  *Id.* (internal quotation marks omitted).
[84]  *Id.*
[85]  *See generally* MTS Br.
[86]  *Id.* at 7-8.
[87]  *Id.* at 10.

were committed."[88] As to the latter, the affidavit stated that 1) Perkins used the email

account to supply information to Northwest as part of his PPP loan application; 2)

Perkins emailed his accountants and his wife regarding the PPP loan and the vacation

home purchase; and 3) Perkins and his wife communicated via email with real estate,

mortgage, and title companies regarding the home purchase.[89] This is more than

sufficient to show probable cause that evidence of the alleged misappropriation of

PPP loan proceeds would be found in the Perkins' email accounts.[90]

### 2. Staleness

Perkins argues that the information in the affidavit purporting to establish

probable cause was stale because "[t]he most recent information specifically tied to

the Google account was dated June 15, 2021, more than one year prior to the issuance

of the search warrant."[91] Though "[i]t is true that the 'age of the information

supporting a warrant application is a factor in determining probable cause,'"[92] "age

alone does not determine staleness."[93] "Rather, we must also examine the nature of

the crime and the type of evidence."[94] "Digital files, particularly those stored with

---

[88] *U.S. v. Atkins*, 2015 WL 4920831, at *4 (W.D. Pa. Aug. 18, 2015) (citing *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986)).

[89] Aff. ¶¶ 10-13, 16.

[90] *See Orie v. Zappala*, 2016 WL 1069097, at *13 (W.D. Pa. Mar. 17, 2016), *rev'd on other grounds* 940 F.3d 845 (3d Cir. 2019) (probable cause where email account had been identified in communications regarding alleged illegal activity).

[91] MTS Br. 13.

[92] *U.S. v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005) (quoting *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002)).

[93] *Id.* (quoting *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993)).

[94] *Id.* (quoting *Harvey*, 2 F.3d at 1322).

an email service provider, are qualitatively different" because they "remain [the email provider's] servers indefinitely unless the subscriber had deleted them or the subscriber's mailbox had exceeded its limits."[95] In particular, "[b]anking and other records relating to the operation of a business are generally maintained for longer than other sorts of records."[96] The nature of email and the records contained in those emails supports a finding of probable cause that the relevant records would still be found in the Perkins' emails even thirteen months later.

### 3.    Overbreadth, Particularity, and Nexus

The Court finds that the warrant is, with one possible exception—the seizure of information described in Attachment B-I(d)—not overbroad, insufficiently particular, or without a nexus to the alleged crime. For ease of discussion, the Court will address the parties' arguments to the warrant globally, then highlight a potential area of concern.

### a.    Global Considerations

Perkins argues that the warrant, seeking "the contents of all emails associated with the accounts from January 1, 2020 to May 15, 2021" including "all records regarding the identification of the accounts," and all other information stored on the

---

[95] *United States v. Khateeb*, 2015 WL 6438755, at *4 (M.D. Fla. Oct. 21, 2015).

[96] *United States v. Addaquay*, 2021 WL 1899355, at *3 (N.D. Ga. Feb. 18, 2021) (citing *United States v. Yusuf*, 461 F.3d 374, 392 (3d Cir. 2006)); *accord United States v. Wheat*, 2022 WL 16851663, at *11 (N.D. Ga. Nov. 10, 2022).

accounts, is overbroad[97] and fails to state the place to be searched and information to be seized with sufficient particularity.[98]

"As the Third Circuit has explained, 'there is a legal distinction between a general warrant,' which is invalid because it lacks particularity, 'and an overly broad warrant which describes in specific terms the items to be seized, 'but authorizes the seizure of items to which there is no probable cause.'"[99] "[A] magistrate may infer probable cause to search [a particular place] so long as the affidavit establishes a nexus between [that place] and the crime under investigation."[100] Federal Rule of Criminal Procedure 41(e)(2)(B) sets out a two-step approach to search warrants for electronic evidence: 1) "the internet service provider produces all potentially responsive data" then 2) "an independent technician segregates and reviews that data to ensure warrant compliance."[101]

Perkins first takes issue with Attachment B-I's authorization of the seizure from Google of the entirety of the information contained in the Target Account for the period between January 1, 2020 and May 15, 2021.[102] The date range is plainly reasonable and the seizure of the entirety of the information contained in the Target

---

[97]  MTS Br. 14-15.
[98]  *Id.* at 15-19.
[99]  *U.S. v. Christie*, 570 F. Supp. 2d 657, 683 (D.N.J. 2008) (quoting *Yusuf*, 461 F.3d at 393 n.19).
[100]  *Stearn*, 597 F.3d at 560.
[101]  *United States v. Harder*, 2016 WL 7647635, at *5 (E.D. Pa. 2016) (collecting cases).
[102]  MTS Br. 14, 17-8.

Account is the first step in the process called for by Rule 41, which has been repeatedly ratified by the courts.[103]

Perkins also takes issue with Attachment B-II's description of the information to be seized as "all information described in Section I that constitutes evidence and instrumentalities" of the alleged crime under investigation.[104] Search warrants which limit their scope to "evidence of specific federal crimes" are sufficiently particular[105] and not impermissibly overbroad.[106] Further, the affidavit describes the alleged scheme.[107] Insofar as Perkins objects that the warrant is invalid because Attachment B-II "provides absolutely no criteria to guide the searching officers in distinguishing between items which may provide evidence of the purported crimes and those which do not," that argument is unavailing. Attachment B-II is an attachment *to the affidavit* and not to be read in isolation.[108] The affidavit's description of the alleged scheme is more than sufficient to "guide the searching officers."

---

[103] *Matter of Search of Info. Associated with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp. 3d 157, 165 (D.D.C. 2014) (collecting cases); *accord United States v. Loera*, 182 F. Supp. 1173, 1237 (D.N.M. 2016); *Harder*, 2016 WL 7647635, at *5; *United States v. Karkalas*, 2016 WL 2710879, at *4 (D. Minn. Feb. 1, 2016); *U.S. v. Lee*, 2015 WL 5667102, at *10 (N.D. Ga. Sept. 25, 2015).

[104] MTS Br. 18; *see also* Aff. Attach. B-II.

[105] *U.S. v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013) (quoting *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005)).

[106] *See Yusuf*, 461 F.3d at 395 (observing "that a search warrant seeking 'documents, records, and personal effects' of the defendants in connection with an investigation into violations of [a specific statute is] not impermissibly overbroad") (quoting *United States v. Kepner*, 843 F.2d 755, 757 (3d Cir. 1988)).

[107] *See* Aff. ¶¶ 9-22.

[108] *See Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco, and Firearms*, 452 F.3d 433, 440 (6th Cir. 2006) ("[A]ll of the courts of appeals (save the Federal Circuit) have permitted warrants to cross-reference supporting affidavits and to satisfy the particularity

Perkins' argument that the affidavit does not establish a nexus between the alleged crimes and the Target Account is similarly flawed. As Perkins himself notes, the affidavit discusses "emails between Mr. Perkins and his accountant,"[109] as well as occasions where Perkins used the Target Account to discuss the alleged scheme and provide information to lenders and other entities in connection with his PPP loan and home purchase.[110] The affidavit need not "show Mr. Perkins' email account was used to commit a federal crime."[111] It must simply show that "there is a fair probability that contraband or *evidence of a crime* will be found in a particular place."[112] "[D]irect evidence linking the place to be searched with criminal activity is not required to establish probable cause to search."[113] The affidavit includes information sufficient for a magistrate to infer therefrom that evidence of the alleged scheme would be within the information contained in the Target Account, such as communications regarding the ability to use the PPP funds for the home purchase.[114]

---

[109] requirement through an incorporated and attached document—at least when it comes to the validity of the warrant at the time of issuance.") (collecting cases).

[109] MTS Br. 20.

[110] Aff. ¶

[111] *Cf.* MTS Br. 20.

[112] *Stearn*, 597 F.3d at 560 (quoting *Gates*, 462 U.S. at 238) (emphasis added).

[113] *United States v. Bowers*, 548 F. Supp. 3d 504, 509 (W.D. Pa. 2021) (citing *United States v. Burton*, F.3d 91, 103 (3d Cir. 2002); *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).

[114] *See id.* at 511 (finding that affidavit set out sufficient information to establish fair probability email accounts would contain communications with like-minded individuals or co-conspirators, evolution of defendant's animus, and ability to acquire weaponry in case of mass shooting at a synagogue).

### b. Attachment B-I(d)

In its opposition, the Government suggests that "the search warrant authorized the disclosure, search, and seizure of a finite set of information maintained by Google as it related to the Target Emails between January 1, 2020 and May 15, 2021."[115] However, as Perkins points out, the warrant is broader than that. "It also includes 'all records or other information regarding the identification of the accounts' and 'all records or other information stored by an individual using the accounts, including address books, contact and buddy lists, calendar data, pictures and files . . . .'"[116]

As to records and information regarding the identification of the accounts, the Court finds that the affidavit sets out sufficient probable cause to seize this information unlimited by a temporal scope. In the affidavit, Burnside asserts that "email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account."[117] Limiting production of such information to the time of the alleged crime, often well after the registration of the account,[118] could result in the misidentification of who was using the account at the relevant time.

---

[115] MTS Opp. 24.
[116] MTS Br. at 14-15; *see also* Aff. Attach. B-I(c-d).
[117] Aff. ¶ 23.
[118] *See id.* ¶ 19 (noting that Perkins had been using the account since at least 2016).

However, the seizure of information such as "address books, contact and buddy lists, calendar data, pictures, and files" without any limiting temporal scope is overbroad. There is no principled basis for limiting the seizure of emails from January 1, 2020 to May 15, 2021 without similarly limiting the seizure of information described in Section B-I(d), which may include information attached to emails outside of that timeframe.[119]

However, the Court cannot determine on the record before it that the Government has actually seized any information under Section B-I(d) that falls outside of the temporal scope.[120] If it turns out that the Government did seize such information, Perkins may ask the Court to revisit the issue at that time.[121]

### 4.    Privilege

Perkins argues that the evidence seized from the Target Account should be suppressed because the warrant was issued after his Sixth Amendment right to counsel had attached.[122] As Perkins notes, he received a target letter on May 13,

---

[119] *Cf. United States v. Rosario*, 2022 WL 827806, at *6 (M.D. Pa. Mar. 18, 2022) (denying motion to suppress where warrant for electronic data had "a limited temporal scope" but also observing that "a warrant is not required to have a specific time frame listed to be sufficiently particularized").

[120] *See U.S. v. Wright*, 777 F.3d 635, 640 (3d Cir. 2015) (observing that courts should consider "what the Government gained from the violation" when evaluating a motion to suppress); *id.* at 641-42 (suppression not warranted where officers limited search despite overbroad warrant).

[121] To be sure, to the extent that suppression is warranted, it would only be of evidence seized under Section B-I(d) outside of January 1, 2020 to May 15, 2021. *See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 151 (3d Cir. 2002) (observing that the remedy for an overly broad warrant is "to excise the [terms] for which there was no probable cause").

[122] MTS Br. 23.

2021, was indicted on June 28, 2022, and the warrant was issued on July 12, 2022.[123] The warrant sought emails from January 1, 2020 to May 15, 2021.[124] "The 'right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"[125] A "target letter does not mark the initiation of formal charges."[126] Perkins does not explain, nor is it apparent to the Court how a warrant for information within the Target Account for a time period that ended over a year prior to his indictment violated his Sixth Amendment right to counsel.[127]

---

[123] *Id.*

[124] Aff. Attach. B-1(a).

[125] *United States v. Lewis*, 322 F. Supp. 3d 579, 585 (M.D. Pa. 2018) (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977)).

[126] *U.S. v. Mshihiri*, 2014 WL 348571, at *9 n.3 (D. Minn. Jan. 31, 2014) (citing *United States v. Ingle*, 157 F.3d 1147, 1151 (8th Cir. 1998)). Perkins does not argue that the existence of an attorney-client privilege at any point prior to his indictment creates a Sixth Amendment right to counsel, which is just as well because that argument has been rejected by the Supreme Court. *Id.* (citing *Moran v. Burbine*, 475 U.S. 412, 430 (1986)). *See also United States v. Scarfo*, 41 F.4th 136, 173 (3d Cir. 2022) ("Government intrusions into pre-indictment attorney-client relationships do not implicate the Sixth Amendment.") (quoting *United States v. Kennedy*, 225 F.3d 1187, 1194 (10th Cir. 2000)).

[127] The Court notes that the issue discussed above regarding Section B-I(d) of the warrant affidavit could have resulted in the seizure of information that would have been protected by Perkins' Sixth Amendment right to counsel. However, as above, there is insufficient record evidence for the Court to determine whether Perkins' Sixth Amendment right was in fact violated, or, if so, what the appropriate remedy would be. To the extent that Perkins becomes aware of such a violation, he may raise the issue at that time.

"The use of filter teams is an acceptable method of protecting constitutional privileges."[128] Though, Perkins cites several decisions in which courts have found Government filter teams offered insufficient protections, each turned on issues not present here. The filter team protocol did not assign judicial functions—the resolution of privilege disputes—to the filter team.[129] This is not a search of a law office.[130] Perkins has not argued that he is unable to undertake his own privilege review of the documents.[131] Nor had the Sixth Amendment right to counsel attached.[132] Perkins highlights that the use of filter teams *can* create "risks to privilege [because] the government's fox is in left in charge of [Perkins'] henhouse,"[133] but overstates the extent to which those risks are implicated here.[134]

---

[128] *Scarfo*, 41 F.4th at 173.

[129] *Compare In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 177 (4th Cir. 2019) ("[W]hen a dispute arises as to whether a lawyer's communications or a lawyer's documents are protected by the attorney-client privilege or work-product doctrine, the resolution of that dispute is a judicial function."); *U.S. v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997) ("Where the government chooses to take matters into its own hands rather than using more traditional alternatives of submitting disputed documents under seal for *in camera* review by a neutral and detached magistrate or by court-appointed special masters, it bears the burden to rebut the presumption that tainted material was provided to the prosecution team.") (internal citations omitted) *with* Filter Team Protocol, Doc. 33-3 ¶ 11 (providing that privilege disputes will be determined by a court).

[130] *June 13 Warrant*, 942 F.3d 159.

[131] *Cf. In re Grand Jury Subpoenas*, 454 F. 3d 511, 515, 522 (6th Cir. 2006) (noting that third party intervenor, asserting privilege over documents turned over by target of investigation, did not have access to the documents, and was at mercy of filter team's privilege determinations).

[132] *Cf. United States v. Castro*, 2020 WL 241112, at *2 (E.D. Mich. Jan. 16, 2020) (rejecting use of taint team to "to protect attorney-client information with regard to each [of] defendant's prison calls").

[133] *Cf.* MTS Reply 10 (quoting *In re Grand Jury Subpoenas*, 454 F.3d at 523-24).

[134] This finding is without prejudice to Perkins' right to raise privilege arguments (either attorney-client or spousal) that may not be covered by his Sixth Amendment right to counsel. Those issues, to the extent they arise, are not properly before the Court on the present motion. The

## IV.    CONCLUSION

For the foregoing reasons, Defendant Nicholas Perkins' Motion to Dismiss the Indictment is granted in part and denied in part and Perkins' Motion to Suppress Evidence Seized Pursuant to the Search Warrant for the Email Account Records from Google is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

Court notes that the Filter Team Protocol provides that it will furnish Perkins with "a log of all presumptively and potentially privileged documents." Protocol ¶ 11(g).